FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DRU CHOKER, D.V.M., and MATTHEW DEMARCO, D.V.M., <br><br> Plaintiffs, <br><br> v. <br><br> PET EMERGENCY CLINIC, P.S., by and through its Board of Directors, and NATIONAL VETERINARY ASSOCIATES, INC., acting on its own behalf and that of NVA PARENT, INC., <br><br> Defendants. | No. 2:20-CV-00417-SAB <br><br> **ORDER DENYING MOTIONS TO DISMISS** |

The Court held a motion hearing in the above-captioned matter on March 5, 2021 via video conference. Plaintiffs were represented by Mary Schultz, who appeared by video conference. Defendant Pet Emergency Clinic ("PEC") was represented by Nicholas Pyle, Geoffrey Swindler, and David Lundsgaard, all of whom appeared by video conference; Mr. Pyle presented arguments on behalf of PEC. Defendant National Veterinary Associates ("NVA") was represented by James McPhee, who appeared by video conference.

During the hearing, the Court heard oral argument on Defendant NVA's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 13, and both

**ORDER DENYING MOTIONS TO DISMISS** * 1

Defendants' Motion to Dismiss, ECF No. 16. Defendant NVA argues the Court should dismiss wrongful termination and breach of contract claims because NVA was neither Plaintiffs' employer nor party to any of the contracts Plaintiffs alleged were breached. Both Defendants argue Plaintiffs failed to state cognizable, plausible antitrust claims and that the Court should also decline supplemental jurisdiction over Plaintiffs' pendent state law claims. The Court took both motions under advisement at the close of the hearing. Having reviewed the briefing and applicable case law and having heard from the parties, the Court denies both motions to dismiss.

## Facts

The Court pulls the following facts from Plaintiffs' Complaint, ECF No. 1, and are assumed to be true for purposes of this motion.

Plaintiffs are both veterinarians and former employees of Defendant PEC. Dr. Choker was a veterinarian with PEC and a PEC shareholder from December 2002 until December 31, 2017. Dr. DeMarco was a veterinarian with PEC and a PEC shareholder from May 2005 through December 31, 2017. Both Dr. Choker and Dr. DeMarco were fired after they refused to sign new employment agreements that contained restrictive terms, including covenants not to compete and mandatory referral agreements. Plaintiffs are now owners and operators of an emergency veterinary services hospital in Coeur d'Alene, Idaho. Defendant PEC is an emergency animal services center located in Spokane, Washington. PEC is composed of over 50 shareholder veterinarians in the Spokane area. Defendant NVA is a national corporation owned by a German parent company—JAB Holding Co.—that "consolidates" local veterinary practices. Defendant NVA is currently under monitoring by the Federal Trade Commission and a consent order in connection with attempted mergers in cross-state border markets in North and South Carolina and Connecticut and New York, respectively, as well as an intrastate market in Virginia in 2020. ECF No. 1 at ¶¶ 4.13-4.14. The claims here

**ORDER DENYING MOTIONS TO DISMISS** * 2

arise out of Defendant NVA and PEC's merger negotiations in 2018, although the merger did not go through and was abandoned in summer 2018.

In general, Plaintiffs argue that Defendants violated federal antitrust laws and Washington State law when it entered into a series of agreements and contracts with each other and with PEC shareholder veterinarians in an attempt to "parlay into a regional monopoly in the delivery of emergency veterinary services." ECF No. 1 at ¶ 1.2. They argue Defendants' monopoly goal required that they be fired as PEC veterinarians and ejected from the Spokane/Post Falls area as competitors in the provision of emergency veterinarian services. *Id.* ¶¶ 1.2-1.3. They allege Defendants sought to create a closed network, with PEC as the emergency hospital hub, plus two specialty practices in surgical services and radiology, and over 50 "feeder" veterinarian practices whose owners would be mandated to refer all customers to the merged NVA/PEC entity. *Id.* at ¶ 1.3. Plaintiffs allege the closed system would have created an effective monopoly and prevented competition because other emergency animal services providers would be unable to develop a customer base and sustain themselves. *Id.*

Plaintiffs allege that, in late 2016, Defendant NVA was contacted by Dr. Joseph Harari—a veterinary surgical services provider—and Dr. Jeffrey Siems—a veterinary radiology provider—about purchasing their respective practices. *Id.* at ¶ 1.13. Dr. Harari and Dr. Siems were tenants in PEC's facility in Spokane, Washington. *Id.* Plaintiffs allege that, through these invitations and ensuing negotiations with Dr. Harari and Dr. Siems, NVA targeted PEC itself as part of its intended "roll-up" acquisition package. *Id.* Plaintiffs argue that PEC was a unique emergency care animal hospital from which a monopoly could emerge by virtue of (1) the acquisition and consolidation of the two corporations and (2) non-competition and referral restraints on those services. *Id.* at ¶¶ 1.14-1.15. Plaintiffs argue that Dr. Hariri and Dr. Siemes, who became president of PEC's Board of Directors during the relevant time period, facilitated the anti-competitive practices

**ORDER DENYING MOTIONS TO DISMISS** ~ 3

alleged herein. *Id.* at ¶ 4.50. Plaintiffs allege that NVA eventually began negotiating directly with PEC's Board of Directors regarding a possible merger. *Id.* at ¶ 4.52.

Plaintiffs allege Defendant PEC is a "willing accomplice" to NVA's anti-competitive plan. *Id.* at ¶ 1.16. Plaintiffs allege there are five "essential agreements" that were made towards achieving this monopoly goal:

- Defendant PEC would impose "maximum" anti-competitive restraints on Plaintiffs and all of its employed veterinarians in preparation for the merger with NVA, including non-compete agreements, non-solicitation agreements, and mandatory referral agreements;
- Veterinarians who refused those restraints would be terminated;
- Plaintiffs, who did refuse those restraints, were terminated;
- Defendants jointly used the "coercive power" of Plaintiffs' stock in PEC to deprive them from creating any competing practice in the region, including in Idaho; and
- Defendants jointly used the "coercive power" of the combined stock of PEC's over 50 outlying veterinarians in the Eastern Washington area to force Plaintiffs from creating or sustaining competition for veterinarian services throughout the Eastern Washington/Northern Idaho region.

*Id.* Plaintiffs argue that these agreements were intended to and did prevent Plaintiffs from contemplating or initiating competition against both Defendants in the Eastern Washington/Northern Idaho cross-border market. *Id.* at ¶ 1.17. They allege they were driven from Spokane and Post Falls to Coeur d'Alene, which they allege is outside of Defendants' intended cross-border restricted region. *Id.* Plaintiffs also allege that these agreements were made as part of Defendants' proposed merger, as documented in a May 2018 letter of intent that included terms of sales. *Id.* at ¶¶ 4.77-4.103. However, Plaintiffs allege that Defendants suspended

**ORDER DENYING MOTIONS TO DISMISS** \* 4

the finalization of this agreement after they filed a lawsuit alleging unfair business practices in Spokane County Superior Court in August 2018. *Id.* at ¶ 4.107. They allege the negotiations are still suspended, but the danger of Defendants' intended monopoly continues to exist. *Id.* They allege that as of November 1, 2020, Defendant NVA remains in "acquisition mode" and has since acquired another veterinary company in the Spokane region. *Id.* at ¶ 4.109.

Plaintiffs allege Defendants' conduct violates Sections 1 and 2 of the Sherman Act, the Washington Unfair Business Act, and is contrary to state public policy. They also allege PEC breached contracts it had with Plaintiffs and wrongfully terminated them in violation of public policy.

## Legal Standard

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Thus, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims are plausible if they allow the court to draw the reasonable inference, based on its own judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678-79. This does not require the court to accept legal conclusions as true. *Id.* at 678. However, if a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of plausibility. *Twombly*, 550 U.S. at 678; *Lacey v. Maricopa Cty.*, 693 F.3d 896, 911 (9th Cir.

**ORDER DENYING MOTIONS TO DISMISS** * 5

2012). A complaint that offers only labels and conclusions or a "formulaic recitation" of the elements of a cause of action does not meet this burden. *Iqbal*, 556 U.S. at 678. Some courts have held that contradictory allegations are inherently implausible and are grounds for dismissal under *Twombly* and *Iqbal*. *See Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1098 (C.D. Cal. 2015).

When ruling on a Rule 12(b)(6) motion, the Court is generally limited to evidence within the pleadings. If the Court considers evidence outside the pleadings, the motion is normally converted into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, the Court may consider documents outside the complaint if it is incorporated by reference in the Complaint, either because the complaint refers to it extensively or the document itself forms the basis of the claim. *Id.* at 908. Although mere mention of a document is insufficient, a document is incorporated when its contents are described and are integral to the complaint. *Tunac v. United States*, 897 F.3d 1197, 1207 fn. 8 (9th Cir. 2018).

### Defendant NVA's Motion to Dismiss

The Court first considers Defendant NVA's Motion to Dismiss, ECF No. 13. Defendant NVA asks the Court dismiss claims of breach of contract and wrongful termination in violation of public policy on the grounds that it was neither a party to any contract with Plaintiffs nor Plaintiffs' employers. However, the Court notes that NVA's motion was not necessary. Turning to the Complaint, neither of these claims are alleged against NVA. *See* ECF No. 1 at ¶¶ 6.13 ("PEC's firing of Plaintiffs…"), 6.14 ("PEC's actions in terminating Plaintiffs…"), 6.15 ("…as a direct result of Defendant PEC's unlawful conduct…"), 6.26 ("PEC's breaches of contract caused the damages…"). Because neither of these claims are actually alleged against Defendant NVA, the motion is denied.

//
//

**ORDER DENYING MOTIONS TO DISMISS** * 6

**Defendant PEC and Defendant NVA's Motion to Dismiss**

The Court next considers Defendant PEC's Motion to Dismiss, ECF No. 16, which Defendant NVA joined, ECF No. 17. Defendants argue the Court should dismiss Plaintiffs' Sherman Act claims because they have failed to allege sufficient facts as to (1) antitrust standing; (2) injury to competition; (3) market power; and (4) relevant geographic and product market. They also request that the Court decline to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims. Plaintiffs argue their complaint is sufficiently detailed at this stage of the proceedings. The Court denies the motion.

Section 1 of the Sherman Act prohibits every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states." 15 U.S.C. § 1. The phrase "restraint of trade" has been narrowly interpreted to mean "undue restraint." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). To establish a Section 1 violation, a plaintiff must establish four elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) the agreement, conspiracy, or combination was intended to harm or unreasonably restrain competition; (3) the agreement actually caused injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged; and (4) that the claimant was harmed by the defendant's anti-competitive contract, combination or conspiracy, and his harm flowed from an anti-competitive aspect of the practice under scrutiny. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). In order to satisfy pleading requirements under *Twombly*, the plaintiff must allege enough factual matter if, taken as true, suggests that an illegal agreement was made, with the reasonable expectation that discovery will reveal evidence of such an illegal agreement. *Kendall*, 518 F.3d at 1047 (citing *Twombly*, 550 U.S. 544).

**ORDER DENYING MOTIONS TO DISMISS** * 7

There are three types of Section 1 claims: *per se* claims, rule of reason claims, and quick look claims. The rule of reason is the default level of analysis and requires a fact-intensive market-level analysis of the claims. *Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011). *Per se* treatment is given only to those agreements that is conclusively determined to be unlawful because they always or almost always tend to restrict competition. *Am. Express*, 138 S. Ct. at 2283. Quick look claims fall between these two ends, and is essentially an abbreviated form of the rule of reason that should be used when "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question could have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999).

The Court concludes that Plaintiffs' Complaint has alleged sufficient facts to make out a plausible Section 1 claim. Plaintiffs' allegations of veterinarian/shareholder non-solicitation agreements as to employees, veterinarian/shareholder mandatory referral and non-competition agreements as to customers, and agreements limiting shareholder communications with suppliers are sufficient to state plausible claims of antitrust injury and injury to competition. Plaintiffs have sufficiently alleged the relevant market in this case; although the Complaint uses several slightly different terms to define the market, the Court finds the description of the market as the area within a 25 mile-radius of PEC's Spokane facility sufficient to state a plausible claim. Finally, although Plaintiffs' response introduced evidence in support of market power that was not incorporated into the Complaint (and that Defendants want the Court to strike), the Court finds the Complaint itself sufficiently alleged market power. As the Ninth Circuit stated in Kendall, these are sufficient facts to demonstrate that further evidence of an illegal agreement or conspiracy may be produced in discovery. *Kendall*, 518 F.3d at 1047. Thus, the Court denies Defendants' motion to dismiss Plaintiffs' Section 1 claim.

**ORDER DENYING MOTIONS TO DISMISS** * 8

Section 2 of the Sherman Act declares it unlawful to monopolize or attempt to monopolize a market. 15 U.S.C. § 2. In order to state a claim under Section 2, a plaintiff must prove: (1) possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury. *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). To establish an attempt to monopolize claim, as alleged here, the plaintiff must allege (1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury. *McGlinchy v. Shell Chem. Co.*, 845 F.3d 802, 811 (9th Cir. 1988).

The Court finds Plaintiffs' Complaint also alleges sufficient facts to make out a plausible Section 2 claim. The Complaint alleges Defendants' combined market power would cover 100% of the animal emergency services market in the 25-mile radius around PEC's Spokane facility. ECF No. 1 at ¶¶ 5.14-5.23. The Complaint also alleges a number of agreements made by PEC at NVA's behest as part of their contemplated merger that had the effect of reducing competition in the provision of emergency veterinary services. The Complaint also alleges a plausible antitrust injury in that Plaintiffs were ejected from their preferred market and forced to open their practice in Coeur d'Alene, Idaho by virtue of the restraints placed on PEC's shareholder veterinarians. The Court therefore denies Defendants' motion to dismiss Plaintiffs' Section 2 claim.

Finally, because the Court is denying Defendants' motion to dismiss, the Court need not consider Defendants' request that the Court decline to exercise supplemental jurisdiction. The anchoring federal claims over which the Court has jurisdiction have not been dismissed, so there is no basis to dismiss the federal claims at this time. 28 U.S.C. § 1367(c); *Retail Pro. Trust v. United Bhd. of Carpenters and Joiners of Am.*, 768 F.3d 938, 962 (9th Cir. 2014).

//

**ORDER DENYING MOTIONS TO DISMISS** \* 9

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant National Veterinary Associates, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 13, is **DENIED**.

2. Defendants' Motion to Dismiss, ECF No. 16, is **DENIED**.

3. Each Defendant shall file an Answer within **twenty-one days** of entry of this Order. A telephonic scheduling conference will be scheduled after receipt of the Defendant's Answers.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 11th day of March 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING MOTIONS TO DISMISS** * 10