FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DRU CHOKER, D.V.M.; and MATTHEW DEMARCO, D.V.M., <br><br>　　　　Plaintiffs, <br><br>　　　　v. <br><br>PET EMERGENCY CLINIC, P.S., by and through its Board of Directors; and NATIONAL VETERINARY ASSOCIATES, INC., acting on its own behalf and that of NVA PARENT, INC., <br><br>　　　　Defendants. | No. 2:20-CV-00417-SAB <br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

　　　　Before the Court is Defendant Pet Emergency Clinic, P.S.' Motion for Summary Judgment as to Antitrust Claims, ECF No. 134, and Plaintiffs Dru Choker and Matthew DeMarco's Counter-Motion for Summary Judgment on Sherman Act Claims, ECF No. 142. The Court heard oral argument on the motions on July 7, 2022 by Video Conference. Plaintiffs Dru Choker and Matthew DeMarco are represented by Mary Schultz. Defendant Pet Emergency Clinic, P.S. ("PEC") is represented by Jeffrey A. Beaver, Brian William Esler, David C.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *1

Lundsgaard, and Geoffrey D. Swindler. Defendant National Veterinary Associates, Inc. ("NVA") is represented by James McPhee.

The Court concludes that Plaintiffs lack an antitrust injury and antitrust standing, and therefore, PEC and NVA are entitled to judgment as a matter of law on Plaintiffs' federal antitrust claims. With all federal claims being disposed, the Court declines to retain jurisdiction over the remaining state-law claims. Plaintiffs' causes of action under state law are dismissed without prejudice.

## I. Facts[1]

Plaintiffs are former employees and shareholders of PEC, which provides emergency veterinary services in Spokane, Washington. Plaintiffs are also the owners and operators of an emergency veterinary hospital in Coeur d'Alene, Idaho. Plaintiffs allege that PEC violated antitrust laws by entering an illegal conspiracy with NVA. The alleged conspiracy proceeded in two stages.

First, Plaintiffs claim that PEC entered a conspiracy with NVA in violation of the antitrust laws to insert non-compete provisions in Plaintiffs' employment agreements with PEC, and then terminate Plaintiffs when they refused to sign those agreements.

PEC initially presented the proposed employment agreements to Plaintiffs in June 2017. Between then and November, PEC negotiated with Plaintiffs and other emergency veterinarians over the proposed contracts. A deadline in November was set for the veterinarians to sign the agreements. The agreement included a "moonlighting clause" that provided PEC veterinarians could not, without prior written consent and during the period of their employment with PEC, render veterinary services to any person or firm that was competitive with PEC, or engage

---

[1] The following facts derive from the parties' respective statements of fact, submitted pursuant to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56(c)(1).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *2

in any emergency activity competitive with or adverse to PEC's business. Plaintiffs declined to sign the agreements, and their employment terminated as of December 31, 2017. However, Plaintiffs remained shareholders in PEC until approximately December 2019.

Second, Plaintiffs claim PEC entered into a conspiracy with NVA in violation of the antitrust laws in connection with a proposed merger, and in particular by signing a "Non-Binding Letter of Intent" ("Non-Binding LOI") that included proposed terms that would require selling shareholders to agree "not to compete within a radius of 25 miles of [PEC] or refer such business to any hospital other than [PEC] for a period of five years." Def. SMF, ¶ 7. Plaintiffs claim that they and other emergency veterinarians believed the proposed employment agreements were being required for purposes of the NVA sale.

Beginning in April 2017, PEC discussed a potential purchase of NVA. Despite Plaintiffs' vigorous objections, on February 21, 2018, NVA disclosed an offer to purchase PEC. The offer was rejected, but PEC sent a revised offer on April 3, 2018. On April 16, 2018, NVA also sent the proposed Non-Binding LOI to PEC, which included non-competition, non-solicitation, and referral provisions in connection with the potential sale to NVA. The Non-Binding LOI was signed on May 14, 2018. It provided that a purchase agreement between PEC and NVA would include noncompetition clauses within a 25-mile radius for PEC shareholders as well as prevent shareholders from routinely referring emergency cases to any other hospital for five years.

By August 18, 2018, PEC received a draft of NVA's proposed merger agreement, which contained non-compete and referral obligations like those disclosed in the Non-Binding LOI. PEC returned the proposed merger agreement to NVA with changes on October 22, 2018, which (1) reduced the non-compete obligation to businesses providing overnight emergency veterinary services to small animals within a 15-mile radius, (2) excluded veterinary services consistent

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *3

with any shareholder's past practice, including operations during evening and weekend hours, and (3) excluded any "exclusive referrals" clause. By October 31, 2018, PEC and NVA ended discussions regarding a potential merger. No final agreement was reached and NVA did not purchase PEC. Plaintiffs claim that these negotiations are merely suspended, and PEC and NVA do not contend that a future merger is precluded.

When NVA disclosed its first offer to PEC, Plaintiffs purchased property in Coeur d'Alene, Idaho to establish their own veterinary hospital, which does business as Emergency Veterinary Hospital ("EVH"). They claim they originally looked for a location in Spokane but declined to go further given the restrictions PEC and NVA were discussing.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT \*4**

conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Where, as here, parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Accordingly, it is the district court's duty to "review each cross-motion separately . . . and review the evidence submitted in support of each cross-motion." *Id.*

### III. Discussion

PEC moves for partial summary judgment on all of Plaintiffs' antitrust claims; that is, their causes of action under Sections 1 and 2 of the federal Sherman Antitrust Act (15 U.S.C. §§ 1, 2) and their Washington state analogues (RCW §§ 19.86.030, 19.86.040). The motion presents two core legal arguments. First, PEC contends that Plaintiffs have failed to assert a cognizable antitrust injury. Second, and relatedly, it argues that Plaintiffs lack antitrust standing.

Plaintiffs also move for summary judgment on their antitrust claims. Plaintiffs contend that they have proffered sufficient evidence to demonstrate that Defendants engaged in a *per se* unlawful restraint of trade, and their actions are also unlawful pursuant to the rule of reason, in violation of Section 1. Plaintiffs further argue that PEC and NVA's proposed merger, in conjunction with the restrictive terms of the employment agreements, amounts to an attempted monopoly in violation of Section 2.

#### A. Federal Causes of Action

Section 1 of the Sherman Antitrust Act declares illegal all conspiracies in restraint of trade. 15 U.S.C. § 1. Relatedly, Section 2 of the Sherman Act makes it unlawful for any person to attempt to monopolize. *Id.* § 2. Actions for damages

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *5

under the Sherman Act, like this one, are authorized by Section 4 the Clayton Antitrust Act. 15 U.S.C. § 15(a); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021). Section 4 provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained[.]" Despite its apparent breadth, courts have since read limitations into the language of Section 4 on the premise that "Congress did not intend [it] to have such an expansive scope." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1054 (9th Cir. 1999). Now, a plaintiff must demonstrate "antitrust standing." *Oakland Raiders*, 20 F.4th at 455; *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000).

The Supreme Court has identified certain factors for determining whether antitrust standing exists:
> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall;
> (2) the directness of the injury;
> (3) the speculative measure of the harm;
> (4) the risk of duplicative recovery; and
> (5) the complexity in apportioning damages.

*Oakland Raiders*, 20 F.4th at 455 (quoting *Am. Ad Mgmt.*, 190 F.3d at 1054). A court "need not find in favor of the plaintiff on each factor." *Id.* (quoting *Am. Ad Mgmt.*, 190 F.3d at 1055). Rather, antitrust standing requires a "case-by-case analysis," *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996), and a court may "find standing if the balance of factors so instructs." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1363 (9th Cir. 1986). Nevertheless, the first factor, antitrust injury, is mandatory. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109, 110 n.5 (1986); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Oakland Raiders*, 20 F.4th at 455; *Am. Ad Mgmt.*, 190 F.3d at 1055.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *6

An antitrust injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). The Ninth Circuit has identified four requirements for an antitrust injury: (1) unlawful conduct; (2) causing an injury to the plaintiff; (3) that flows from that which makes the conduct unlawful; and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055. The second and fourth elements are dispositive to this case.

Plaintiffs assert three distinct injuries from PEC and NVA's allegedly anticompetitive conduct. First, Plaintiffs claim they were injured when their employment was terminated after they refused to sign the purportedly unlawful employment agreements.[2] Second, Plaintiffs claim harm because they were compelled to base their business out of Coeur d'Alene, Idaho, as opposed to Spokane, Washington. Third, Plaintiffs claim they are injured because they "remain unable to return to the market," due to risk of an anti-competitive merger. ECF No. 173 at 16. None of these alleged injuries are cognizable antitrust injuries.

Plaintiffs' loss of their jobs does not constitute an antitrust injury. *Vinci v. Waste Management*, 80 F.3d 1372 (9th Cir. 1994). In *Vinci*, the plaintiff owned and operated a waste recycling business that received recyclable materials from Waste Management. *Id.* at 1373. Vinci alleged that Waste Management breached their recycling agreement with the purpose of driving his company out of business. *Id.* at 1373–74. Waste Management subsequently acquired his recycling plant, and hired Vinci as its employee; however, Vinci asserted that the Waste Management

---

[2] PEC disputes that it "terminated" Plaintiffs, arguing instead that Plaintiffs "quit rather than sign[ ] the proposed employment agreements." ECF No. 162 at 98. The matter need not be resolved here because it is irrelevant to the Court's analysis.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *7

fired him when he refused to cooperate in anti-competitive schemes. *Id.* at 1374. Vinci's purported injuries were (1) economic damage to his recycling business, and (2) his employment termination. *Id.* at 1375.

       The district court dismissed Vinci's antitrust claims for lack of antitrust standing. *Id.* at 1374. The Ninth Circuit affirmed and held that "[t]he loss of a job is not the type of injury that the antitrust laws were designed to prevent." *Id.* at 1376. Rather, the court reasoned those antitrust laws were intended to "preserve competition for the benefit of consumers in the market in which competition occurs." *Id.* (quotation omitted). Vinci was neither a competitor nor a consumer in his role as an employee, and therefore, his termination did not constitute an antitrust injury. *See id.* As in *Vinci*, Plaintiffs' job termination in this case is not an antitrust injury.

       For the same reason, the location selected by Plaintiffs for their business does not constitute an antitrust injury, much more one Plaintiffs can assert in their individual capacities. Plaintiffs claim they were forced to open EVH in a different city due to fears regarding an impending merger. Plfs. SMJ, ¶¶ 333–34. Plaintiffs concede EVH is not a competitor to PEC and NVA, but a competitor in "an entirely new market in Coeur D'Alene, Idaho." Plfs. SMJ, ¶¶ 288.I, 324, 333. EVH is not a competitor to PEC or NVA, and thus, it similarly cannot suffer an antitrust injury. *See Vinci*, 80 F.3d at 1376; *Somers v. Apple*, 729 F.3d 953, 963 (9th Cir. 2013).

       Plaintiffs also cannot assert the injury on behalf of EVH. The Ninth Circuit in *Vinci* held that an injury to Vinci's recycling business—even if he was the sole shareholder of the business—was not an injury to himself and did not provide him with antitrust standing. *See id.* In so holding, the court reasoned that "'[i]f shareholders were permitted to recover their losses directly, there would be the possibility of a double recovery, once by the shareholder and again by the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *8

corporation.'" *Id.* (quoting *Stein v. United Artists Corp.*, 691 F.2d 885, 896–97 (9th Cir. 1982)).

Relatedly, Plaintiffs' claim that they are unable to enter the Spokane market is not supported by the record and cannot provide Plaintiffs with antitrust standing. Plaintiffs can compete in the relevant market because they are not bound by any restrictive covenants in the unexecuted employment agreements or merger agreement. Plaintiffs are also no longer shareholders of PEC and therefore could not be bound by restrictions in a future merger agreement between PEC and NVA. To the extent Plaintiffs are concerned about how restrictions in a future merger could affect referrals to EVH if it became a competitor in the market, the harm is too speculative and indirect to amount to an antitrust injury to EVH or Plaintiffs as individuals. *See Oakland Raiders*, 20 F.4th at 455. The factors weigh against a finding that Plaintiffs have antitrust standing. *See id.*

Without an antitrust injury, Plaintiffs lack antitrust standing to sue. *Oakland Raiders*, 20 F.4th at 455. Defendants are entitled to summary judgment on the Sherman Act claims.

### B. State Causes of Action

The Court declines to retain supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, Plaintiffs' state antitrust, wrongful termination, and breach of contract claims are dismissed without prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Pet Emergency Clinic, P.S.' Motion for Summary Judgment as to Antitrust Claims, ECF No. 134, is **GRANTED**.

2. Plaintiffs' Counter-Motion for Summary Judgment, ECF No. 142, is **DENIED**.

3. Plaintiffs' Motion to Amend/Correct Complaint, ECF No. 181, is **DISMISSED as moot**.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *9

     4.     Plaintiffs' Motion to Exclude Defense Expert Keith B. Leffler, ECF No. 60, is **DISMISSED as moot**.

     5.     The District Court Clerk is directed to **ENTER JUDGMENT** in favor of Defendants, and against Plaintiffs, as to their claims under Section 1 and 2 of the Sherman Antitrust Act.

     **IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close** the file.

     **DATED** this 4th day of August 2022.



                        Stanley A. Bastian
                    Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** *10